## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **OREN LEWIS** | § | **PETITIONER** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:21cv373-HSO-MTP** |
| | § | |
| | § | |
| **BRAND HUFFMAN** | § | **RESPONDENT** |

## ORDER OVERRULING PETITIONER'S OBJECTIONS [41]; ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [38]; AND DISMISSING AMENDED PETITION FOR WRIT OF HABEAS CORPUS [6]

Petitioner Oren Lewis objects [41] to the Report and Recommendation [38] of United States Magistrate Judge Michael T. Parker, which recommended that his Amended Petition for Writ of Habeas Corpus [6] be dismissed with prejudice. After due consideration of the Report and Recommendation [38], Petitioner's Objections [41], the record, and relevant legal authority, the Court finds that Petitioner's Objections [41] should be overruled, that the Magistrate Judge's Report and Recommendation [38] should be adopted, and that the Amended Petition for Writ of Habeas Corpus [6] should be dismissed with prejudice.

## I. BACKGROUND

Following a jury trial, Petitioner Oren Lewis ("Petitioner" or "Lewis") was convicted on June 16, 2017, in the Circuit Court of Hancock County, Mississippi, of the capital murder of his two-year-old daughter, M.B. *See* R. [13-3] at 118-119 (filed restricted access); *see also, generally, Lewis v. State*, 295 So. 3d 521, 526 (Miss. Ct. App. 2019). Lewis was sentenced to life without the possibility of parole in the custody of the Mississippi Department of Corrections. *See* R. [13-3] at 119 (filed

restricted access).  On July 23, 2017, Lewis filed in the trial court a motion for new trial or, in the alternative, for a judgment notwithstanding the verdict, *see id.* at 123-30, and a supplemental motion for a new trial, R. [13-4] at 4-5 (filed restricted access).

One of the grounds Lewis advanced in his motion was that Juror #39, Kimberly Burlette ("Burlette"), was "friends on Facebook" with the victim's mother, referred to in the record as Rita Bush or Rita Miller ("Bush" or "Miller"), who "hates" Petitioner.  R. [13-3] at 125 (filed restricted access).  When the venire was asked during voir dire if anyone knew Bush, Burlette did not respond.  *Id.*; *see also* R. [13-6] at 67 (trial judge asking jury panel if anyone was "personally acquainted with Mr. Davis or [Petitioner]," and Burlette apparently did not identify herself (filed restricted access)); *id.* at 106 (asking venire, after the State identified Bush as a potential witness, if anyone is "personally acquainted with any of the witnesses the State has announced it might call," but not identifying Burlette as a potential juror who responded affirmatively).  According to Petitioner, he "would never have kept a juror who was friends with Rita Bush."  R. [13-3] at 125 (filed restricted access).

The state court conducted a hearing on Petitioner's motion for new trial, where Bush testified twice that she did not know Burlette.  *See* R. [13-11] at 58-62. According to Bush, the first she ever heard of Burlette was about a month after the trial.  *Id.* at 62-63.  Following the hearing, the trial court denied Petitioner's motion. *See* R. [13-4] at 78 (filed restricted access).

Petitioner appealed through counsel to the Mississippi Supreme Court, *see id.* at 80, which assigned the case to the Mississippi Court of Appeals, *see* R. [13-14] at 135 (filed restricted access).  Lewis raised various issues on appeal.  R. [13-13] at 3 (filed restricted access).[1]  On October 29, 2019, the Mississippi Court of Appeals affirmed Petitioner's conviction and sentence.  *See Lewis v. State*, 295 So. 3d 521 (Miss. Ct. App. 2019); R. [13-4] at 5-38 (filed restricted access).

Petitioner sought certiorari in the Mississippi Supreme Court, *see* R. [13-15] at 10-17 (filed restricted access), which that Court denied on May 6, 2020, *see id.* at 7.  Petitioner then sought leave from the Mississippi Supreme Court to file a motion for post-conviction collateral relief raising the following Grounds:

(1) Petitioner was denied a fair trial before an impartial jury because a juror purportedly concealed relevant information about her relationships with Petitioner and M.B.'s mother, who was a State's witness at trial, *see* R. [17] at 7-12 (filed restricted access);

(2) trial counsel was ineffective, *see id.* at 12-37;

(3) the jury was selected in violation of the United States and Mississippi Constitutions and *Batson v. Kentucky*, 476 U.S. 79 (1986), *see id.* at 37-44; and

(4) regarding tissue samples from M.B.,
    (a)    there was spoliation of evidence, *see id.* at 48-56,
    (b)    the State violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not providing Petitioner the exculpatory evidence prior to trial, *see id.* at 56-57, and
    (c)    there was newly discovered evidence because the coroner purportedly had his certificate suspended by the Office of the State Medical Examiner "in part due to failure to comply with adequate preservation of evidentiary samples and potential failure to submit correction documentation required for child death investigations," *id.* at 51.

---

[1] Petitioner did not raise any *Batson* claim or any issue with Burlette serving as a juror on direct appeal.  *See* R. [13-3] at 1-33 (filed restricted access).

In support of his motion, Petitioner submitted a signed statement dated

March 9, 2018, from Tennille Johnson ("Johnson"), which stated as follows:

> On or about June 12, 2017, I was working at Factory Connection in Waveland, with Kimberly Burlette who was [a] juror in Oren Lewis['] trial. I saw an article on the Seaecho [sic] website where it stated that a juror knew the defendant and the juror knew Rita Miller the baby's mom.
>
> The next day at work at Factory Connection I asked Kim about the article [that] was published on Seaecho [sic] web site, [sic] at first she said she couldn't take [sic] about it but then she told me that she knew Oren and Rita because they were friends on Facebook being [sic] Kim + Rita. I told her she wasn't suppose [sic] to be on that jury since she knew the defendant and Rita. She then asked me if she was going to be arrested or get in trouble. I told her I didn't know. After we finished talking I went to my boss . . . and asked her did she read the article she yes [sic] I did she [sic] read the article she yes [sic] I told her that Kim was the juror that knew the defendant and Rita.
>
> I have seen Kim and Rita Miller talking and texting on Facebook long before the baby died. They have been friends for a long time. After the trial they both shut down their Facebook page. I haven't seen anything posted on them since the trial.

Ex. J [6-12] at 134-136 (filed restricted access).

The Mississippi Supreme Court denied Petitioner's motion for post-conviction

collateral relief, *see* R. [17-1] at 14-16 (filed restricted access), finding that

Petitioner did "not present a substantial showing that he was denied either a fair

trial by an impartial jury or effective assistance of counsel," *id.* at 15 (citing Miss.

Code Ann. § 99-39-27(5)). It also determined that, "because the alleged *Batson*

violation was raised at trial and capable of determination on direct appeal but not

asserted," Petitioner's "*Batson* claim [was] waived." *Id.* (citing Miss. Code Ann. §

99-39-21(1)). "Notwithstanding the waiver bar," the Court held that Petitioner did

"not present a substantial showing that a *Batson* violation occurred." *Id.* (citing Miss. Code Ann. § 99-39-27(5)).   Finally, the Court concluded that "the new evidence [was] insufficient to meet the newly-discovered evidence standard" and that Petitioner had not "present[ed] a substantial showing that the State violated *Brady.*" *Id.* (citing Miss. Code Ann. § 99-39-27(5); *Havard v. State*, 86 So. 3d 896, 906 (Miss. 2012); *Ormond v. State*, 599 So. 2d 951, 962 (Miss. 1992)).

On November 17, 2021, Petitioner filed his federal Petition [3] for Writ of Habeas Corpus, *see* Pet. [3], which he amended on January 13, 2022, *see* Am. Pet. [6].  Petitioner raises the same grounds for relief asserted in his state post-conviction motion:

> Ground 1:   Petitioner was denied a fair trial before an impartial jury because juror Burlette purportedly concealed relevant information about her relationships with Petitioner and the victim's mother, who was a State's witness at trial, *see* Am.  Pet. [6] at 17-22 (filed restricted access);

> Ground 2: trial counsel was ineffective in several respects: (a) failing to utilize experts regarding the victim's injuries to refute the State's experts and to challenge Petitioner's stepdaughter M.W.'s testimony; (b) failing to request a "taint hearing" concerning M.W.'s testimony; (c) failing to use youth court testimony in which the State's experts purportedly contradicted their trial testimony; and (d) failing to identify the flaws in one of the State's expert's opinion and/or offer testimony and argument for its exclusion, *see id.* at 22-48;

> Ground 3: the jury was selected in violation of the United States and Mississippi Constitutions and *Batson v. Kentucky*, 476 U.S. 79 (1986), *see id.* at 48-58; and

> Ground 4: regarding tissue samples from M.B., (a) there was spoliation of evidence, *see id.* at 58-61, (b)the State violated *Brady* by not providing Petitioner the exculpatory evidence prior to trial, *see id.* at 66-70, and (c) there was newly discovered evidence, specifically that the coroner purportedly had his certificate suspended by the Office of the State Medical Examiner, *see id.* at 61-66; *see also* R. [17] at 7-51.

On November 2, 2023, United States Magistrate Judge Michael T. Parker entered his Report and Recommendation [38] recommending that the Amended Petition [6] be dismissed with prejudice. *See* R. & R. [38] at 38. Petitioner has submitted Objections [41] to the Report and Recommendation [38]. *See* Obj. [41].

Petitioner objects to the Magistrate Judge's findings as to Ground 1 concerning juror Burlette and Ground 2 on his ineffective assistance of counsel claims. *See id.* Specifically, as to Ground 1, Petitioner argues that he was denied an impartial jury because Burlette "repeatedly lied on voir dire," *id.* at 1, and case law demonstrates that he is entitled to a new trial, *see id.* at 1-14, 17-18 (collecting cases), or "[a]t the very least . . . an evidentiary hearing to hear the testimony of Juror Burlette," *id.* at 15; *see id.* at 17-19 (citing Johnson's affidavit). As for Ground 2, Petitioner contends that "[t]he very existence of the affidavits of Dr. Nichols and Dr. Webb indicate their availability and willingness to testify," and that he was deprived of expert testimony. *Id.* at 21. He further argues that "[t]he Youth Court transcript clearly shows that the testimony of the experts testifying before that Court raised questions regarding the timing of the injuries to the minor trial [sic]," but his attorney failed to utilize it to cross-examine the State's expert and lay witnesses. *Id.*[2]

---

[2] Petitioner does not specifically object to the Magistrate Judge's Report and Recommendation [38] findings concerning trial counsel's failure to request a taint hearing to determine whether M.W. should have been allowed to testify. *See* R. & R. [38] at 16-18; Obj. [41].

Petitioner's Reply [45] to Respondent's Response [43] focuses on his "fair-and-impartial-jury claim," arguing that Respondent's position is untenable because he has presented evidence that a juror "knew . . . the minor child's mother and lied to the Court . . . repeatedly on *voir dire*."  Reply [45] at 1-2.  Plaintiff has not objected to Grounds 3 and 4 of the Report and Recommendation's findings as to an alleged *Brady* violation and the issues concerning the tissue samples, and the time for doing so has passed.  *See* L.U. Civ. R. 72(a)(3).

## II. <u>DISCUSSION</u>

A.    <u>Standard of Review</u>

The Court applies the "clearly erroneous or contrary to law" standard to those portions of the Report and Recommendation [38] to which Petitioner raises no objection.  28 U.S.C. § 636(b)(1)(A).  But the Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991).  A de novo review "means that this Court will examine the entire record and will make an independent assessment of the law."  *Lambert v. Denmark*, Civil No. 2:12-cv-74-KS-MTP, 2013 WL 786356, at *1 (S.D. Miss. Mar. 1, 2013).  In conducting a de novo review, however, a court is not "required to reiterate the findings and conclusions of the magistrate judge."  *Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993).

Under the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"), an application for a writ of habeas corpus on behalf of a person in custody pursuant to state court judgment

shall not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the
claim--
(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
court proceeding.

28 U.S.C. § 2254(d).

A state-court decision is "contrary to" clearly established federal law
when it "arrives at a conclusion opposite to that reached by [the
Supreme] Court on a question of law or if the state court decides a case
differently than [the Supreme] Court has on a set of materially
indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413, 120
S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state-court decision is an
"unreasonable application of" clearly established federal law if it
"identifies the correct governing legal rule from [the Supreme Court's]
cases but unreasonably applies it to the facts of the particular state
prisoner's case," or if it "unreasonably extends a legal principle from
[Supreme Court] precedent to a new context where it should not apply
or unreasonably refuses to extend that principle to a new context where
it should apply." *Id*. at 407, 120 S.Ct. 1495. Clearly established federal
law comprises "the holdings, as opposed to the dicta, of [the Supreme]
Court's decisions as of the time of the relevant state-court decision." *Id*.
at 412, 120 S.Ct. 1495.

*Guidry v. Lumpkin*, 2 F.4th 472, 482 (5th Cir. 2021).

"[A] determination of a factual issue made by a State court shall be presumed

to be correct," and "[t]he applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C.

§ 2254(e)(1). With respect to hearings,

[i]f the applicant has failed to develop the factual basis of a claim in
State court proceedings, the court shall not hold an evidentiary hearing
on the claim unless the applicant shows that--
(A)    the claim relies on--

  (i)  a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

  (ii)  a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B)  the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

The Fifth Circuit has "consistently held that a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review." *Sandoval Mendoza v. Lumpkin*, 81 F.4th 461, 472 (5th Cir. 2023) (quotations omitted). To determine whether an adjudication on the merits occurred, the Fifth Circuit looks "at whether the state court reached the merits of the petitioner's claim rather than deciding it on procedural grounds." *Id.* (quotation omitted). Where the state court adjudicated the petitioner's claims on the merits, an evidentiary hearing would not aid the district court review, and the district court does not abuse its discretion in denying a request for an evidentiary hearing. *Id.*

B. <u>Whether Petitioner Is Entitled to Habeas Relief on Those Grounds to Which He Did Not Object (Grounds 3 and 4)</u>

The Amended Petition [6] raised a *Batson* violation in Ground 3, and spoliation of evidence, *Brady*, and newly discovered evidence claims in Ground 4. *See* Am. Pet. [6] at 48-56 (filed restricted access). Because Petitioner did not object to the Magistrate Judge's Report and Recommendation [38] as to these Grounds, the Court applies the "clearly erroneous or contrary to law" standard to those

portions of the Report and Recommendation [38]. 28 U.S.C. § 636(b)(1)(A). The question presented is not whether the Court would concur with the state court's rulings; instead, it looks through the deferential lens of § 2254(d)(1). *See, e.g.*, 28 U.S.C. § 2254(d)(1); *Owens v. Lumpkin*, No. 22-40217, 2023 WL 4676842, at *2 (5th Cir. July 21, 2023) ("The question presented to us is not whether we would have concurred if we sat on that state court. Rather, our question presented is whether the state court's application of *Brady* was so unreasonable that no fairminded jurist could agree with it." (citation omitted)).

As to these Grounds, the Magistrate Judge concluded that Lewis had failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence. *See* R. & R. [38] at 32-38; 28 U.S.C. § 2254(d). Having reviewed the record, the Court concludes that the Magistrate Judge's findings on Grounds 3 and 4 were not "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A), and it will adopt the Report and Recommendation [38] as to Grounds 3 and 4.

C.    Whether Petitioner Is Entitled to Habeas Relief on Those Grounds to Which He Objects (Grounds 1 and 2)

1.    Ground 1: Denial of a Fair and Impartial Jury

a.    Petitioner's Allegations

Petitioner asserts that following his criminal trial, post-conviction counsel discovered the witness Johnson, who knew that juror Burlette "had failed to respond truthfully to unambiguous questions propounded to jurors during voir dire

about their relationships with the defendant or any of the witnesses." Am. Pet. [6] at 17-18. Johnson's original March 9, 2018, statement was not signed under oath, *see* R. [17] at 134-136 (filed restricted access), but the copy attached to the Amended Petition [6] has an attestation indicating that it was sworn on October 26, 2021, R. [6-12] at 4 (filed restricted access).

According to the Amended Petition [6], Johnson's signed statement demonstrates that Burlette knew both Petitioner and the victim's mother, Miller, who testified at trial. Am. Pet. [6] at 18. But when potential jurors were asked during voir dire whether they were personally acquainted with Petitioner or any of the witnesses, Burlette remained silent. *See id.* at 18-22. Even after Johnson purportedly confronted Burlette about the impropriety of her serving on the jury, she continued to serve and failed to reveal these relationships to the trial court. *See id.* at 21. According to Petitioner, "[t]here is no doubt that Ms. Burlette's concealment of that information was prejudicial to Lewis' ability to challenge her for cause or peremptorily," such that "the Court should either find that he is entitled to a new trial or remand for an evidentiary hearing on this issue." *Id.* at 22.

Respondent points out that Johnson's affidavit refers to an article dated June 12, 2017, but voir dire did not begin until June 13, 2017, a day after the date of the alleged article when Johnson allegedly confronted Burlette. *See* Resp. [12] at 22 (filed restricted access). And Burlette would have been in court on that day, rather than at work. *Id.* "Moreover, an allegation that Burlette knew the victim's mother was not made until after trial, when Petitioner filed his motion for a new trial on June 23, 2017." *Id.* Respondent has submitted a copy of an article from the <u>Sea</u>

Coast Echo website dated January 12, 2018, reporting on the state court's denial of Petitioner's motion for a new trial and his argument that "a friend of the victim's mother was allowed on the jury." Ex. A [12-1] at 1-2 (filed restricted access). Respondent insists that this is the article referenced by Johnson, not one from June 12, 2017. Resp. [12] at 22 (filed restricted access).

b.    Relevant Authority

The Sixth Amendment guarantees a criminal defendant the right to an impartial jury. *See* U.S. Const. amend. VI; *Skilling v. United States*, 561 U.S. 358, 377 (2010). "[T]he presence of a biased juror may require a new trial as a remedy." *Hatten v. Quarterman*, 570 F.3d 595, 600 (5th Cir. 2009). "A juror is biased if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* (quotation omitted).

A juror suffers from actual bias if she fails to answer a material question honestly during voir dire, and "a correct response would have provided a valid basis for a challenge for cause." *Id.* To obtain a new trial in such a situation, a litigant generally "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). "On federal habeas review, state court findings concerning a juror's impartiality are factual determinations entitled to a presumption of correctness." *Buckner v. Davis*, 945 F.3d 906, 910 (5th Cir. 2019).

c.    <u>The Report and Recommendation [38]</u>

The Magistrate Judge found that "Petitioner provides no clear and convincing evidence to overcome the presumption of correctness given to the state court's findings" and that Johnson's statement "does not constitute clear and convincing evidence that Juror Burlette failed to honestly answer a material question." R. & R. [38] at 7. Specifically, "Johnson's statement is based on hearsay, and as Respondent points out, it is unreliable." *Id.* While "Johnson claims she read an article on June 12, 2017, concerning a juror knowing Petitioner and Miller," voir dire in the criminal trial did not begin until June 13, 2017. *Id.* Additionally, the Magistrate Judge concluded that "Johnson's statement is contradicted by Miller's specific testimony that she did not know Burlette," *id.* at 7-8, and "[t]he Mississippi Supreme Court considered the evidence, including Johnson's signed statement," *id.* at 8. The Magistrate Judge concluded that "Petitioner has not shown that the state court's factual findings were unreasonable." *Id.*

d.    <u>Petitioner's Objections [41]</u>

Petitioner maintains that Burlette "failed to respond truthfully to unambiguous questions propounded to jurors during voir dire about their relationships with the defendant or any of the witnesses," again citing Johnson's statement. Obj. [41] at 16; *see id.* at 16-18. He insists that "Burlette's friendship with the mother of the victim was a factor which would lead a judge to sustain a challenge for cause," due to "the natural tendency" of wanting "to punish the person who killed her friend's child . . . ." *Id.* at 19. "At the very least, the 28 U.S.C.

[§] 2254 pleadings require an evidentiary hearing to hear the testimony of Juror Burlette." *Id.* at 15.

Respondent counters that the Magistrate Judge had the benefit of the post-trial motion and a hearing held in state court on Petitioner's fair-and-impartial-jury claim, as well as the parties' filings in this proceeding, such that he was able to resolve Petitioner's claim by way of a "paper hearing." Resp. [43] at 5 (quoting *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000)).

On the merits, Respondent contends that the Magistrate Judge properly determined that the state court's rejection of this claim "was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state court's decision based on an unreasonable determination of the facts in light of the evidence." *Id.* at 10. According to Respondent, Petitioner improperly raises a new argument for the first time in his Objection [41], faulting counsel for not subpoenaing Burlette to testify at the post-trial hearing. *Id.* at 11. Respondent contends that this argument is nevertheless meritless, *see id.* at 11-12, as Petitioner fails to show that he would have been successful in compelling Burlette's testimony on any alleged misconduct even if counsel had attempted to subpoena her, *id.* at 12.

e.    <u>Analysis</u>

Petitioner has not shown that he is entitled to an evidentiary hearing in this Court. *See* 28 U.S.C. § 2254(e)(2). On June 22, 2017, a mere six days after the verdict, Petitioner's trial counsel filed a motion for new trial or, in the alternative, for a judgment notwithstanding the verdict ("JNOV"), raising the jury issue, and specifically naming Burlette and stating that she and the victim's mother were

14

friends on Facebook. R. [13-3] at 125 (filed restricted access). Petitioner's trial counsel also filed a motion to direct Facebook to produce account information or, in the alternative, to direct the State to request a search warrant for Facebook accounts, again citing Burlette's friendship with the victim's mother. R. [13-4] at 53-55 (filed restricted access).

The Circuit Court of Hancock County conducted a hearing on Petitioner's motion for a new trial. *See* R. [13-11] at 57-58 (filed restricted access). The victim's mother, Miller, testified under oath several times that she did not know Burlette, *id.* at 59-61, which is consistent with Burlette not responding during voir dire that she was personally acquainted with Miller, *see* R. [13-6] at 67, 106 (filed restricted access). The Circuit Court also entered an order directing Facebook to produce account information concerning Miller's and Burlette's accounts. R. [13-4] at 76-77 (filed restricted access). After considering Petitioner's arguments and the evidence, the Circuit Court denied Petitioner's motion for new trial and/or JNOV. *Id.* at 78.

Petitioner raised this issue in his post-conviction motion before the Mississippi Supreme Court, R. [17] at 1-60 (filed restricted access), arguing that Johnson's affidavit "show[ed] Ms. Burlette knew both the defendant and the victim's mother, who testified at trial," *id.* at 7. The Mississippi Supreme Court rejected this claim, finding Petitioner had not "present[ed] a substantial showing that he was denied either a fair trial by an impartial jury or effective assistance of counsel," R. [17-1] at 15 (filed restricted access), and that the new evidence was insufficient to meet the newly-discovered-evidence standard, *id.*

15

Petitioner repeats this argument and cites the same affidavit to this Court. *See* Am. Pet. [6] at 17-18; *compare* Aff. [6-12] (filed restricted access), *with* R. [17] at 9 (filed restricted access).   Because Petitioner has not shown that his claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence," and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense," he has not shown that he is entitled to a hearing on the fair-and-impartial-jury claim.   28 U.S.C. § 2254(e)(2).

Petitioner also has not cited clear and convincing evidence to overcome the presumption of correctness afforded the state court's findings on this issue.   *See* 28 U.S.C. § 2254(e)(1); *Sandoval Mendoza*, 81 F.4th at 472.   As the Magistrate Judge concluded, Johnson's affidavit does not constitute clear and convincing evidence that Burlette failed to honestly answer a material question, as it is based at least in part on unreliable hearsay and contradicts Miller's sworn testimony on this point. *See* R. & R. [38] at 7-8; Aff. [6-12] 1-4.   Johnson relies upon Burlette's purported hearsay statement to her on June 13, 2017, that she knew Petitioner and Miller because Burlette and Miller were allegedly friends on Facebook.   *See* Aff. [6-12] at 1-2; Fed. R. Evid. 801(c).   But consistent with Burlette's silence in voir dire, Miller testified under oath at the hearing on Petitioner's motion for a new trial that she did not know Burlette.   *See* R. [13-11] at 57-61 (filed restricted access).   Petitioner has not demonstrated that the Magistrate Judge erred in determining that Johnson's affidavit does not constitute clear and convincing evidence that Burlette

16

failed to honestly answer a material question, *see* R. & R. [38] at 7, or that the state court's adjudication of this claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d).

Nor has Petitioner shown that the state court's adjudication of this claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). While Petitioner cites Supreme Court authority that a court must remand for an evidentiary hearing to determine whether a juror concealed information in voir dire about her relationship with a prosecution witness and the prosecutor, Obj. [41] at 2 (citing *Williams v. Taylor*, 529 U.S. 420 (2000)), that case is distinguishable because the factual basis of the claim there was not reasonably available to counsel during the state habeas proceedings, *Williams*, 529 U.S. at 442. Here, Petitioner actually raised this issue in state court, which held a hearing and rejected it. Petitioner also cites *Crawford v. United States*, 212 U.S. 183 (1909), for the proposition that the Supreme Court "reversed where a juror was untruthful in voir dire responses and the record did not show that the defendants were not prejudiced." Obj. [41] at 2. But that case was on direct appeal from the former Supreme Court of the District of Columbia, not habeas review. *See Crawford*, 212 U.S. at 186. This objection should be overruled.[3]

---

[3]  Petitioner states for the first time in his Objection [41] that "[t]he error [of trial counsel not being permitted to exercise a peremptory strike on Burlette] is compounded by the **ineffectiveness of counsel** in subpoenaing Burlette to the hearing on post trial motions." Obj. [41] at 15 (emphasis in original). Petitioner claims that he "was deprived both of the

2.    Ground 2: Ineffective Assistance of Counsel

a.    Petitioner's Allegations

Petitioner contends that his trial counsel was ineffective because he committed errors which are each individually sufficient to warrant a new trial, and that in combination clearly undermine confidence in the outcome of the case. Am. Pet. [6] at 24. Petitioner faults trial counsel for: (1) failing to utilize experts to address injuries sustained by a fall and to challenge his stepdaughter M.W.'s testimony; (2) failing to request a "taint hearing" to determine whether M.W.'s testimony had been so influenced by outside sources and "the faulty interview" by the State's expert Dr. Jamie Jackson ("Dr. Jackson") that M.W.'s testimony was so untrustworthy as to be inadmissible; (3) failing to use youth court testimony in which the State's experts, Dr. Edward James Byrnes ("Dr. Byrnes") and Dr. Jackson,[4] purportedly contradicted their trial testimony; and (4) failing to identify

---

right and ability to select a fair and impartial jury, but also of the right to perfect his record for purposes of appeal." *Id.* Because it is raised for the first time in the Objection [41], any ineffective assistance claim concerning failure to subpoena Burlette to testify at the post-trial hearing is not properly before this Court. *See Finley v. Johnson*, 243 F.3d 215, 219 n.3 (5th Cir. 2001) ("[I]ssues raised for the first time in objections to the report of a magistrate judge are not properly before the district judge."). And even if Petitioner had properly exhausted this claim, he has not shown that, had his trial counsel attempted to subpoena Burlette, he would have been successful in compelling her testimony on any alleged misconduct; this is insufficient to show prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[4] Dr. Byrnes and Dr. Jackson were two of the State's experts in its case-in-chief. According to Petitioner, Dr. Byrnes and Dr. Jackson also testified at a youth court proceeding concerning the cause of the victim's injuries, which testimony contradicted their statements at trial. *See* Am. Pet. [6] at 42-43 (filed restricted access). Petitioner further maintains that Dr. Jackson conducted forensic interviews that she was not qualified to perform. *Id.* at 43.

the flaws in Dr. Jackson's opinion and/or offer testimony and argument for its exclusion.  *Id.* at 25-48.

b.    Relevant Legal Authority

A two-pronged test applies for evaluating claims of ineffective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner seeking relief must demonstrate both that his counsel's performance was deficient, and that the deficient performance prejudiced his defense.  *Id.*  *Strickland* "imposes a high bar on those alleging ineffective assistance of counsel.  But 28 U.S.C. § 2254(d), which applies when reviewing a state prisoner's federal habeas appeal, raises the bar even higher."  *Canfield v. Lumpkin*, 998 F.3d 242, 246 (5th Cir. 2021).  "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quotations and citations omitted).

A petitioner must demonstrate that his counsel's performance was both deficient and prejudicial under *Strickland*, and "he must show that the state habeas court's decision otherwise was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence.'"  *Canfield*, 998 F.3d at 246 (quoting 28 U.S.C. § 2254(d)).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.  A federal habeas court reviews "state-court adjudications for errors 'so obviously wrong' as to lie

'beyond any possibility for fairminded disagreement,'" *Canfield*, 998 F.3d at 246 (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020)), and the court "presume[s] findings of fact to be correct," *id.* (quoting 28 U.S.C. § 2254(e)(1)).

Counsel's performance is deficient under *Strickland* "if his behavior 'fell below an objective level of reasonableness.'" *Id.* at 247 (quoting *Strickland*, 466 U.S. at 688). Deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To show prejudice, counsel's errors must be so serious as to deprive the petitioner of a fair trial, meaning "a trial whose result is reliable." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. If a court finds that a petitioner has made an insufficient showing as to either of the prongs, it may dispose of the ineffective assistance claim. *See id.* at 697.

The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). In order to prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*

c.    <u>The Report and Recommendation [38]</u>

Petitioner claims that his counsel was ineffective for (1) failing to utilize experts concerning injuries sustained by the victim in a fall and challenging M.W.'s testimony; (2) failing to request a "taint hearing"; (3) failing to utilize youth court testimony where the State's experts Dr. Byrnes and Dr. Jackson purportedly contradicted their trial testimony; and (4) failing to identify the flaws in Dr. Jackson's opinion and/or offer testimony and argument for its exclusion. *See* Am. Pet. [6] at 25-48.  In support of his state-court motion for post-conviction relief, Petitioner submitted an affidavit and reports from Dr. George Nichols ("Dr. Nichols"), a physician certified in anatomic, clinical, and forensic pathology, opining on the victim's cause of death. *See* R. [17] at 193-208.  The Magistrate Judge found that these submissions did not establish that Dr. Nichols was available to testify and would have done so, or that his testimony would have been favorable to his defense.  R. & R. [38] at 11.  Nor did Petitioner show a reasonable probability that, but for counsel's failure to call Dr. Nichols, the jury would not have convicted him. *Id.*

With respect to Petitioner's challenge to M.W.'s testimony, the Magistrate Judge considered an affidavit he submitted from psychiatrist Dr. Mark Webb ("Dr. Webb"), stating that M.W.'s behavior and her ADHD symptoms affected her ability to accurately recount the events concerning M.B.'s death. *See id.* at 14; Aff. [6-21]. The Magistrate Judge concluded that "Petitioner's submissions do not demonstrate that Dr. Webb was available to testify and would have done so, which are required to prevail on this claim."  R. & R. [38] at 14.  Also, "Petitioner has not shown a

reasonabl[e] probability that but for counsel's failure to call Dr. Webb, the jury would not have convicted him." *Id.*   And the Report and Recommendation [38] detailed testimony elicited by counsel at trial concerning the very issue addressed by Dr. Webb, M.W.'s credibility. *See id.* at 15-16.

As for trial counsel's failure to request a "taint hearing," the Magistrate Judge determined that "Petitioner has not shown that a 'taint hearing' was required or even available under Mississippi law." *Id.* at 17.   Nor had he established that such a hearing was required as a matter of federal constitutional right. *Id.*   Trial counsel "was not ineffective for failing to move for such an extraordinary hearing." *Id.* at 17-18.   Additionally, M.W.'s testimony did not go unchallenged at trial, as "trial counsel specifically and thoroughly attacked" her credibility.    *Id.* at 18.

Turning to the alleged failure to identify the flaws in Dr. Jackson's opinion and present testimony and argument in support of its exclusion, the Magistrate Judge found that to the extent Petitioner faults counsel for not challenging Dr. Jackson's qualifications, he failed to establish that counsel had any valid basis for doing so or that he suffered any prejudice as a result. *Id.*   With respect to the argument that counsel should have had Dr. Jackson's testimony excluded on grounds of faulty methodology, the Magistrate Judge observed that "Petitioner mischaracterizes Dr. Jackson's testimony," and "[c]ontrary to Petitioner's assertions, trial counsel specifically questioned Dr. Jackson about the possibility of an accidental injury."   *Id.* at 19.

Finally, with respect to trial counsel's failure to utilize purportedly contradictory youth court testimony from Dr. Jackson and Dr. Byrnes, Petitioner

"failed point to any meaningful contradictions or show the requisite deficient performance or prejudice necessary to sustain an ineffective-assistance-of-counsel claim." *Id.* at 20; *see id.* at 20-23. According to the Magistrate Judge, "[n]one of Petitioner's arguments in support of his ineffective-assistance-of-counsel claim merit habeas relief," and he "has failed to overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* at 23 (quoting *Strickland*, 466 U.S. at 689). "More importantly, Petitioner has failed to establish that the Mississippi Court of Appeals's rejection of Petitioner's ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." *Id.*

d.      Petitioner's Objection [41]

Petitioner asserts that "[t]he very existence of the affidavits of Dr. Nichols and Dr. Webb indicate their availability and willingness to testify." Obj. [41] at 21. He contends that "[i]nconsistency between witnesses, among other factors, creates a credibility question that is a matter of jury determination. Lewis was deprived of this, both with regard to expert testimony and the failure of trial counsel to utilize the Youth Court testimony with regard to the cross examination of the State's expert and lay witnesses." *Id.* According to Petitioner, "[t]he Youth Court transcript clearly shows that the testimony of the experts testifying before that Court raised questions regarding the timing of the injuries to the minor trial [sic]." *Id.* Petitioner does not specifically object to the Magistrate Judge's finding that a "taint hearing" was not required as a matter of federal constitutional right and that

23

Petitioner has not demonstrated that counsel was ineffective in failing to request one. *See id.*

Respondent counters that Petitioner's "statement that '[t]he very existence of the affidavits of Dr. Nichols and Dr. Webb indicate their availability and willingness to testify' is conclusory and still does not meet the factors outlined . . . by the Magistrate Judge" to prevail on an ineffective assistance of counsel claim. Resp. [43] at 16 (quoting Obj. [41] at 21). Respondent insists that Petitioner "has presented nothing to overcome the Magistrate Judge's detailed examination of this issue." *Id.* at 17. As for counsel's failure to use Dr. Jackson's and Dr. Byrnes' youth court testimony, Respondent argues that Petitioner's "conclusory arguments fail to overcome the Magistrate Judge's thorough examination on this issue." *Id.* at 18.

e.   <u>Analysis</u>

(1)   <u>Trial Counsel's Failure to Offer the Testimony of Dr. Nichols and Dr. Webb</u>

Dr. Nichols, a licensed physician certified in anatomic, clinical, and forensic pathology, produced a report and a supplemental report in November and December 2020. *See* Ex. [6-18] at 1-6 (filed restricted access). The supplemental report opines as to an alternative cause of the victim's death. *Id.* at 5. Dr. Webb is a licensed psychiatrist who testified concerning M.W.'s ability to recount accurately the events surrounding the victim's death. *See* Ex. [6-21] at 1-2 (filed restricted access).

But neither of these experts, nor Petitioner, has averred that either Dr. Nichols or Dr. Webb was available to testify at Petitioner's trial and that they would have done so, which is fatal to an ineffective assistance of trial counsel claim. *See Day*, 566 F.3d at 538. Petitioner insists that "[t]he very existence of the

affidavits of Dr. Nichols and Dr. Webb indicate their availability and willingness to testify," Obj. [41] at 21, but their reports and affidavits were not created until years after the 2017 trial, *see* Ex. [6-18] at 1-6 (filed restricted access) (Dr. Nichols' affidavit dated August 2, 2021, and reports dated November 20, 2020, and December 3, 2020);  Ex. [6-21] at 1-2 (filed restricted access) (Dr. Webb's affidavit dated August 4, 2021).

Also, as the Magistrate Judge noted, Petitioner's trial counsel raised alternative causes of the victim's death at trial, which would have been the purpose of Dr. Nichols' testimony.  He further elicited testimony concerning M.W.'s credibility, which is the very issue addressed by Dr. Webb.  *See* R. & R. [38] at 13-16.  This undermines any argument of prejudice.  *See id.*  Considering the "doubly" highly deferential standards created by *Strickland* and § 2254(d), which apply in tandem here, *Harrington*, 562 U.S. at 105, the Court finds that Petitioner's ineffective assistance claim concerning trial counsel's failure to offer the testimony of Dr. Nichols and Dr. Webb is not well taken, and his Objection [41] on this point should be overruled.

(2)    Trial Counsel's Failure to Offer Dr. Jackson's and Dr. Byrnes' Youth Court Testimony

Petitioner maintains that the "Youth Court transcript clearly shows that the testimony of the experts testifying before that Court raised questions regarding the timing of the injuries to the minor trial [sic]."  Obj. [41] at 21.  But Petitioner's assertions that his trial counsel's performance was deficient because he did not impeach the State's experts with their prior youth court testimony are conclusory.

*See id.*; *see also, e.g.*, *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) ("Frivolous, conclusive or general objections need not be considered by the district court." (quotation omitted)); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."). And he has not identified any specific and meaningful contradictions between Dr. Jackson's and Dr. Byrnes' youth court testimony and their testimony at trial. *See* Obj. [41] at 21; Am. Pet. [6] (filed restricted access). Simply put, Petitioner has not overcome the "strong presumption that counsel's representation was within the wide range of reasonable professional assistance," *Canfield*, 998 F.3d at 247 (quotation omitted), and he has not demonstrated any prejudice, meaning a reasonable probability the result of the criminal trial would have been different had Petitioner's counsel utilized the experts' youth court testimony, *see id.*; *Strickland*, 466 U.S. at 687. Nor has Petitioner shown that the "state habeas court's decision otherwise was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'was based on an unreasonable determination of the facts in light of the evidence.'" *Canfield*, 998 F.3d at 246 (quoting 28 U.S.C. § 2254(d)). This Objection [41] should be overruled.

(3)    Trial Counsel's Failure to Request a Taint Hearing

Because Petitioner did not object to the Magistrate Judge's Report and Recommendation [38] as to counsel's failure to request a taint hearing, the Court applies the "clearly erroneous or contrary to law" standard to that portion of the Report and Recommendation [38]. 28 U.S.C. § 636(b)(1)(A). Having reviewed the

record and relevant legal authority, the Court finds that the Magistrate Judge's findings as to this portion of Ground 2 were not "clearly erroneous or contrary to law," 28 U.S.C. § 636(b)(1)(A), and it will adopt the Report and Recommendation [38] as to Ground 2.

Even if the Court applies a de novo standard of review to this Ground because Petitioner objected to the other ineffective assistance findings, the result would not change.   As the Magistrate Judge stated, Petitioner has not shown that a "taint hearing" was required or even available under Mississippi law.  R. & R. [38] at 17.  Nor has Petitioner shown that such a hearing was required under the United States Constitution.  *See id.*  Counsel was therefore not ineffective in failing to move for such a hearing.  *See id.* at 17-18.[5]  Even if somehow deemed deficient performance, as the Magistrate Judge explained, M.W.'s testimony did not go unchallenged by trial counsel, obviating any prejudice claim.  *See id.* at 18.  Any objection regarding the failure to request a "taint hearing" would therefore be overruled.

---

[5]  The deficiency prong of an ineffective assistance of counsel claim "is judged by counsel's conduct under the law existing at the time of the conduct."  *Lave v. Dretke*, 416 F.3d 372, 379 (5th Cir. 2005) (quotation omitted).  "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 105 (quotation omitted).  Based upon the record here, the Court cannot say that it was deficient performance for trial counsel not to request a "taint hearing" concerning M.W.'s testimony.

III. <u>CONCLUSION</u>

The Court will overrule Petitioner's Objections [41], adopt the Magistrate Judge's Report and Recommendation [38] as the opinion of this Court, and dismiss the Amended Petition [6] for Writ of Habeas Corpus with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Petitioner Oren Lewis's Objections [41] to the Report and Recommendation [38] of United States Magistrate Judge Michael T. Parker are **OVERRULED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Report and Recommendation [38] of United States Magistrate Judge Michael T. Parker entered on November 2, 2023, is **ADOPTED** in its entirety as the finding of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Petitioner Oren Lewis's Amended Petition for Writ of Habeas Corpus [6] is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 11th day of December, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE